FILED
2011 Feb-07  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**SAMUEL GREEN, individually, on behalf of himself and all others similarly situated,**

      **Plaintiff,**

    **v.**

                                  **CASE NO.: 1:10-cv-00259-RBP**

**CABLE ONE, INC.,**

      **Defendant.**


## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Michael R. Pennington
Robert J. Campbell
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Fax: (205) 521-8800
mpennington@babc.com
rcampbell@babc.com

Eric C. Bosset
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 662-5606
Fax: (202) 662-6291
ebosset@cov.com

Michael D. Hays
Jonathan D. Hart
DOW LOHNES PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6802
Telephone: (202) 776-2000
Fax: (202) 776-2222
mhays@dowlohnes.com

Simon J. Frankel
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 591-6001
sfrankel@cov.com

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

I.     Plaintiff's Motion To Amend Must Be Denied Because The Court Has No Subject Matter Jurisdiction Due To Plaintiff's Lack Of Standing. ...........2

     A.     Plaintiff Has No Standing To Prosecute This Action. ........................2

     B.     Plaintiff Cannot Cure This Court's Lack Of Subject Matter Jurisdiction By Attempting To Add New Plaintiffs To The Action. ................................................................................................10

II.     Plaintiff Cannot Establish Good Cause For Failing To Comply With The Deadlines Set Forth In This Court's Scheduling Order. ........................12

III.     Plaintiff's Motion Does Not Satisfy Rule 15's Amendment Standard. ........15

CONCLUSION ...................................................................................................17

# INTRODUCTION

In response to Cable One's motion to dismiss this case because plaintiff lacks standing (Dkts. # 54 and 55), plaintiff moved to amend his complaint to substitute new named plaintiffs. (Dkt. # 58). His motion must be denied for three independent reasons.

First, because plaintiff has no standing to prosecute this action, the Court has no subject matter jurisdiction to allow him leave to amend. A plaintiff without standing cannot prevent the constitutionally mandated dismissal of his lawsuit by seeking to substitute other plaintiffs for himself. An "actual case or controversy" must exist between the defendant and a named plaintiff with standing for the Court to have the jurisdiction necessary to grant any form of relief, including the addition or substitution of parties. Controlling authority holds that a plaintiff without standing may not amend to avoid dismissal for lack of subject matter jursidiction.

Second, aside from plaintiff's lack of standing (which alone requires denial of his motion to amend), the motion also is precluded under the Court's Scheduling Order establishing August 31, 2010 as the deadline for amendment or addition of parties. Plaintiff has not sought leave of Court to be excused from this long-expired deadline, and plaintiff's one-sentence motion to amend the complaint does not even attempt to articulate, much less demonstrate, the requisite "good cause" under Rule 16(b) for making an exception to the Court's Scheduling Order.

Third, even if these two defects could be ignored, plaintiff fails to justify the requested amendment under the standards of Federal Rule of Civil Procedure 15. To the contrary, plaintiff's attempt to insert new named plaintiffs for the purpose of filing another motion for class certification, coming as it does just one month prior to the scheduled close of fact discovery in this case, is both untimely and prejudicial to Cable One.

For all of these reasons, the Court should deny plaintiff's motion to amend and grant Cable One's earlier-filed motion to dismiss this action.

# ARGUMENT

## I. Plaintiff's Motion To Amend Must Be Denied Because The Court Has No Subject Matter Jurisdiction Due To Plaintiff's Lack Of Standing.

Cable One's separate memorandum in support of its motion to dismiss demonstrated that plaintiff Green has no standing to prosecute this lawsuit against Cable One.  (*See* Dkt. # 55, at 8-9, 11-12).[1]  Consequently, as explained below, this Court has no jurisdiction to grant the motion to amend.

### A. Plaintiff Has No Standing To Prosecute This Action.

"Standing is a doctrine that stems directly from Article III's 'case or controversy' requirement, and thus it implicates [a federal court's] subject matter

---

[1]     "Factually-based attacks on subject matter jurisdiction . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (internal quotation marks omitted).

jurisdiction." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (internal quotation marks omitted).  "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999).

As the Eleventh Circuit has explained, "standing is perhaps the most important jurisdictional doctrine," *Bochese*, 405 F.3d at 974 (internal quotation marks omitted), and "[s]ubject matter jurisdiction . . . can never be forfeited or waived." *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008) (internal quotation marks omitted).  "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

To establish standing and properly invoke a federal court's jurisdiction, a plaintiff must show:

> "(1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004) (quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-

81 (2000)).  "All three elements are an irreducible constitutional minimum, and failure to show any one results in a failure to show standing."  *Id.* at 1305 (internal quotation marks omitted).

In this case, the evidence establishes that plaintiff Green incurred neither "injury in fact" nor injury that is "fairly traceable" to Cable One, *because plaintiff was not a Cable One internet user during the period relevant to this action*.  Cable One summarizes below the evidence establishing that plaintiff has no standing, which mandates denial of his motion to amend:

On February 4, 2010, plaintiff filed this action against Cable One for himself and a proposed class of "[a]ll individuals who were *users of Cable One's Internet services and whose Internet communications traversing Cable One's Internet services network were diverted to a NebuAd Appliance*," with limited exceptions. Compl. ¶¶ 63, 65 (emphasis added).  NebuAd was a "third party provider of tailored advertising services" (*id.* ¶ 14) that arranged to test on Cable One's network serving Anniston, Alabama, a new technology to deliver customized internet advertisements based on an individual user's web browsing activity (*e.g.*, automobile advertisements for users who had viewed automobile websites).  *See* Dkt. # 50-1, Declaration of Brad Ottley ¶ 10 ("Ottley Decl.") (filed November 24,

2010).[2]  The NebuAd test ran "from November 20, 2007 through May 22, 2008" ("the NebuAd test period").  *Id.*[3]

The complaint alleged that "[a]t all times relevant to this complaint, Plaintiff Samuel Green ('Plaintiff') was a citizen and resident of Calhoun County, Alabama, was a subscriber to Cable One's broadband Internet services, and therefore a User, as defined herein."  Compl. ¶ 6.  "User," in turn, was defined in the complaint as "persons or entities *who used [Cable One's] electronic communications services, were duly authorized by [Cable One] to engage in such use*, and were therefore 'users' as defined in the Wiretap Act."  *Id.* ¶ 7(d) (emphasis added).  Through discovery, Cable One established that plaintiff Green, in fact, neither used Cable One's internet service during the relevant period nor was authorized to do so.

Cable One's subscription records revealed that plaintiff Green was a subscriber to Cable One's internet service at various times at two different addresses – one in Anniston, Alabama, and the other in Oxford, Alabama.[4]

---

[2]    Mr. Ottley is "Director, Internet Operations" at Cable One.  Ottley Decl. ¶ 2.  Redacted versions of Mr. Ottley's declaration and attached business records were substituted by Cable One for use by the court clerk in the publicly available portion of the record in this case (*see* Dkt. # 51), with a request that the original, un-redacted version be placed under seal for use by the Court itself.

[3]    NebuAd is a defendant in another lawsuit brought by plaintiff's counsel that is pending in California and from which Cable One was previously dismissed.  *See Valentine, et al. v. NebuAd, et al.*, No. C08-05113, slip op. (N.D. Cal. Oct. 16, 2009).

[4]    As it did in its motion to dismiss and supporting memorandum, Cable One has only identified plaintiff Green's city and state in this brief pursuant to local administrative rules.  The (continued…)

However, not until plaintiff was deposed did Cable One learn at *which* address

plaintiff purportedly had used the internet *during the NebuAd test period* – the only

period relevant to this litigation.[5]  In his November 9, 2010 deposition, plaintiff

testified that he lived *only* at his Anniston address throughout the NebuAd test

period.  *See* Dkt. # 49-8, Dep. of Samuel Green 8:9-12 ("Green Dep.") (filed

November 24, 2010) ("Q. So you were living at the [Anniston] address from

November 2007 through May of 2008?  A. Yes, sir."); *id.* 9:19-22 ("Q. From the

period November 2007 through May 2008, did you live at any address other than

the [Anniston] address?  A. No.").[6]  Plaintiff further testified that the *only*

_____

Court may find the specific street address in the referenced exhibits, previously filed with the
Court on November 24, 2010.

[5]      During the Court's telephonic hearing on January 24, 2011, plaintiff's counsel argued
that Cable One somehow had conceded plaintiff's standing in its Answer.  However, "no action
of the parties can confer subject-matter jurisdiction upon a federal court."  *Oldfield v. Pueblo De
Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009) (quoting *Ins. Corp. of Ireland, Ltd.
v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  In any event, counsel's
contention is easily refuted, because Cable One expressly asserted the defense that "*[p]laintiff
lacks standing to assert some or all of his claims against Cable One and to represent any
putative class with regard to those claims.*"  Dkt. # 12, Cable One's Answer at 24 (Second
Defense) (filed Apr. 2, 2010) (emphasis added).  Cable One acknowledged that "Plaintiff Samuel
Green was a subscriber to Cable One's broadband Internet services at a residence in Calhoun
County, Alabama," which was true at various times.  *Id.* ¶ 6.  But, Cable One *denied* all of the
remaining allegations in paragraphs 6 and 7(d) of the complaint – including that plaintiff Green
was a "subscriber" and "User" "[a]t all times relevant to this complaint" – because, as noted,
Cable One then lacked sufficient knowledge or information regarding those matters.  *Id.* ¶¶ 6,
7(d).

[6]      Plaintiff testified that he had not lived at his Oxford address since June 2007 – five
months prior to commencement of the NebuAd test.  *See* Dkt. # 49-8, Green Dep. 9:19 – 10:6
("From the period November 2007 through May 2008, did you live at any address other than the
[Anniston] address?  A. No.  Q. What was the address at which you lived prior to June 2007?  A.
[REDACTED] Oxford, Alabama [REDACTED].  Q. And for how long had you lived at that
address prior to June 2007?  A. September 2005 until June of 2007.").

- 6 -

computer he used during the NebuAd test period was located at this Anniston

address.  *See id.* 47:12-19 ("Q. You didn't have any other computer besides the

Systemax [computer] from November of 2007 through May of 2008?  A. No, sir.

Q. And that was the only computer being used at the [Anniston] address during

that period?  A. Yes, sir.").  Similarly, plaintiff testified that he used the internet

*only* at his Anniston address during the NebuAd test period.  *See id*. 79:12-20 ("Q.

So to be clear, from November 2007 through May of 2008, the only computer that

you were using with internet access was the Systemax computer?  A. Yes, sir.  Q.

And that computer during the period of November 2007 through May of 2008 was

located at the [Anniston] residence?  A. Yes, sir.").

     Plaintiff's deposition testimony establishes that he had lacked standing to

sue Cable One from the outset, because Cable One's business records show that

*plaintiff cancelled his Cable One internet service at his Anniston address the day*

*before the NebuAd test began, and that he did not reactivate internet service at this*

*address until several months after the NebuAd test period had ended.*[7]  Per

plaintiff's request, Cable One deactivated plaintiff's user account with Cable One

---

[7]    *See* Dkt. # 50-1, Ottley Decl. ¶¶ 3, 6 ("Cable One maintains in the ordinary course of
business electronic subscription records for all of its customers . . . Among other information,
these records track when a subscriber initiates or terminates services, the address where services
are provided, and the types of services the customer requests and receives . . . According to these
. . . records, Mr. Green requested a change of service to cancel his residential Internet service . . .
and modem lease service . . . at this address on November 19, 2007."); *id.* ¶ 8 ("[T]here was no
Cable One Internet service at this . . . address again until August 26, 2008 . . .").

and thus *plaintiff could not – and did not – use Cable One's internet service during the NebuAd test period.*[8]  Moreover, any such access during the test period would not have been "duly authorized," as required for standing under ECPA (*see* Compl. ¶ 7(d)), because plaintiff was no longer an authorized subscriber once he cancelled Cable One's internet service on November 19.

Thus, plaintiff Green's internet communications could not have been "intercepted" from Cable One's network, because plaintiff had no Cable One internet service during the NebuAd test period.  Plaintiff therefore did not incur any "injury in fact."  *See, e.g.*, *Bochese*, 405 F.3d at 985 ("[Plaintiff] has failed to establish an injury in fact, and is therefore without constitutional standing.").  Separately, plaintiff Green has not incurred any injury that is "fairly traceable to the challenged action of the defendant," because plaintiff was not a user of Cable One's internet service during the NebuAd test period.  *See, e.g.*, *Doe v. Pryor*, 344

---

[8]     *See* Dkt. # 50-1, Ottley Decl. ¶¶ 4, 7-8 ("Cable One also maintains in the ordinary course of business a customer management portal through which Internet database records are managed ("CSR Tools"). . . . Among other information, these records show when Internet service through Cable One's network is activated and when it is terminated. . . . According to Cable One's CSR Tools records for Samuel Green, on November 21, 2007, at 11:04 p.m., the username associated with Mr. Green's Cable One Internet account for the [Anniston] address was unregistered from the Cable One system . . . . [A]s of that date and time, it was no longer possible to connect to the Internet through Cable One's network at that address . . . .").  Plaintiff testified that he did *not* know if he used the internet during the two days between when he cancelled his subscription and when Cable One deactivated his service – a fatal admission given plaintiff's burden of proof with respect to standing.  *See* Dkt. # 49-8, Green Dep. 88:8-14.  ("Q. As you sit here today, do you know whether you accessed the internet on November 20, 2007?  A. I don't know.  Q. Do you know whether you accessed the internet on November 21, 2007?  A. I don't know.").  More generally, plaintiff testified that he was not "on the computer on a regular basis."  *Id*. 102:2-3.

F.3d 1282, 1285 (11th Cir. 2003) ("Even if we assume . . . injury-in-fact . . . [plaintiff] still does not have standing to bring this claim because her injuries are not fairly traceable to the Alabama Attorney General. . . .").  Accordingly, plaintiff has no legal standing to prosecute this action against Cable One.

In evaluating plaintiff's standing, "[n]o presumptive truthfulness attaches to plaintiff's allegations."  *McMaster v. U.S.*, 177 F.3d 936, 940 (11th Cir. 1999) (internal quotation marks omitted).  At all times, "[t]he party invoking federal jurisdiction bears the burden of proving standing."  *Bischoff v. Osceola Cnty*, 222 F.3d 874, 878 (11th Cir. 2000).  Plaintiff Green has *no* competent evidence to contest Cable One's proof that plaintiff did not use (and could not use) Cable One's internet network during the NebuAd test period.[9]  Indeed, plaintiff has *no* records relating to his alleged Cable One subscription or usage.[10]  The simple fact

---

[9]     For instance, plaintiff has *no* "web history, web cache, or cookie data" on his computer "that reflect a creation, modification, or access date between November 20, 2007 to May 22, 2008, inclusive," which is the NebuAd test period.  *See* Dkt. # 49-9, Plaintiff's Responses to Defendant's Interrogatories, ¶ 7 (filed Nov. 24, 2010).  Plaintiff is unable to testify affirmatively that he used the internet on *any* particular date during the NebuAd test period.  *See* Dkt. # 49-8, Green Dep. 88:15-18 ("Q. Is there any specific date from November 2007 through May of 2008 that you can testify under oath you were using the internet?  A. No, sir.").

[10]    Cable One first requested any subscription and usage records in plaintiff's possession in July 2010.  Although his counsel served written responses to Cable One's Rule 34 requests, plaintiff subsequently testified that he had never been asked to search (nor had he searched) for documents.  *See* Dkt. # 49-8, Green Dep. 87:8-15 ("Q. Do you have any documents relating to the internet service that you purchased from CableOne?  A. If I do, it's in a box.  Q. Have you checked?  A. No, sir.  Q. No one has asked you to check?  A. No, sir.").  Plaintiff's long overdue search occurred after his deposition, and plaintiff's counsel subsequently represented in writing that plaintiff had no subscription or usage records for the relevant period – a representation that plaintiff's counsel reaffirmed during the January 24, 2011 telephone hearing with this Court.

that Green now seeks to substitute other plaintiffs for himself plainly demonstrates his inability to carry his burden to establish standing.

**B.    Plaintiff Cannot Cure This Court's Lack Of Subject Matter Jurisdiction By Attempting To Add New Plaintiffs To The Action.**

"A federal court *must always* dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (emphasis added); *see* Federal Rule of Civil Procedure 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action.") (emphasis added).  Because plaintiff Green "cannot satisfy . . . constitutional standing requirements, the case lies outside the authority given to the federal courts by Article III and must be dismissed."  *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1038 (11th Cir. 2008).

Plaintiff cannot avoid a mandatory dismissal by proposing that others be permitted to replace him, because there is no justifiable "case or controversy" under Article III empowering the Court to grant the motion to amend.  As the Eleventh Circuit has explained, "[w]here a plaintiff never had standing to assert a claim against the defendants, *it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs*, a new class, and a new cause of action."  *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (quoting *Summit*

*Office Park, Inc., v. United States Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981)) (emphasis added).  In *Summit Office*, which also is binding on this Court,[11] the named plaintiff brought a putative class action suit and subsequently acknowledged facts establishing that it lacked standing, as here.  *Id.* at 1282.  The district court denied the plaintiff's motion to amend for purposes of substitution, and the Fifth Circuit affirmed, holding that "[s]ince Summit had no standing to assert a claim, it was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action."  *Id.* at 1282-83.  Applying this controlling authority, "[c]ourts in this circuit have held that where the sole plaintiff in a case loses standing to proceed on his or her cause of action, the plaintiff also loses standing to amend the complaint to add plaintiff parties whose cause of action would survive."  *Lawrence v. Household Bank (SB), N.A.*, 505 F. Supp. 2d 1279, 1285 (M.D. Ala. 2007).

This rule also is followed in other jurisdictions.  For example, the Seventh and Ninth Circuits have held that subject matter jurisdiction cannot be manufactured by the proposed addition of new plaintiffs to a case.  *See, e.g.*, *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (Posner, J.) (rejecting plaintiff's argument "that even if they do lack standing, the suit should not have

---

[11]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.  *Summit Office* was decided on March 19, 1981.

been dismissed but instead other members of the class should have been named as the class representatives," and holding that "these plaintiffs never had standing to bring this suit, and so federal jurisdiction never attached"); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (holding that because the named plaintiff never had standing, the case must be remanded with instructions to dismiss, rejecting proposition that "proceedings may follow under which it may be possible that the suit can proceed as a class action with another representative").[12]

In sum, where the sole named plaintiff has no standing, there is no subject matter jurisdiction, and where there is no subject matter jurisdiction, a court is without jurisdiction to allow plaintiff's attorneys to substitute another named plaintiff. This fundamental rule requires denial of plaintiff's motion to amend.

## II.   Plaintiff Cannot Establish Good Cause For Failing To Comply With The Deadlines Set Forth In This Court's Scheduling Order.

For the reasons explained above, the Court must deny plaintiff's motion to amend and dismiss this action for lack of subject matter jurisdiction. Even if

---

[12]    *See also Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 344 (N.D. Okla. 2010) ("Where the only named plaintiff in a putative class action lacks standing from the outset of the case, and a class has yet to be certified, the proper course is dismissal."); *Anthony v. Am. Airlines, Inc.*, No. 03 C 3681, 2006 WL 2794777, at *16 n.17 (N.D. Ill. Sept. 27, 2006) ("[T]his is not a case in which substitution of plaintiffs is possible. Anthony is the sole named plaintiff and she never had standing to bring this lawsuit, so federal jurisdiction never attached.") (internal quotation marks omitted). *In re Exodus Commc'ns., Inc. Sec. Litig.*, No. C-01-2661, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006) ("[W]here the named plaintiffs in a class action lack standing, the action must be dismissed and new named plaintiffs with standing may not intervene.").

plaintiff were not jurisdictionally barred from seeking to amend his complaint, plaintiff has failed to present 'good cause" under Rule 16(b) for his untimely motion.  Any plaintiff seeking leave to amend a complaint after expiration of a court-ordered deadline for amendment must first demonstrate "good cause" under Rule 16(b) before a court may even consider whether the proposed amendment is proper under Rule 15(a).  *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).  "If a party was not diligent, the good cause inquiry should end." *Id.* (internal quotation marks and alterations omitted).

Here, plaintiff neither offers "good cause" nor has he any.  The Court's Scheduling Order set an August 31, 2010 deadline for the amendment of pleadings and addition of any parties.  *See* Dkt. # 37 (entered June 29, 2010).  Plaintiff filed his motion to amend nearly *five months* after that deadline passed, which is ample reason to deny the motion.[13]  Here, as in *Sosa*, "[t]he record makes clear that . . . [plaintiff's] failure to comply with the court's scheduling order resulted from a lack of diligence."  133 F.3d at 1419.

---

[13]      *See, e.g.*, *Angiolillo v. Collier Cnty.*, No. 10-10895, 2010 WL 3330004, at *1 (11th Cir. Aug. 25, 2010) (rejecting motion for leave to amend filed nearly four months after the court's deadline); *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) (refusing to allow amendment where "deadline to amend pleadings had come and gone five months earlier"); *Abrams v. Ciba Specialty Chems. Corp.*, No. 08-0068-WS-B, 2009 WL 1658525, at *1 (S.D. Ala. Jun. 12, 2009) (denying leave to amend where motion filed more than three months after deadline); *Kuithe v. Gulf Caribe Maritime, Inc.*, No. 08-0458-WS-C, 2009 WL 3158193, at *1 (S.D. Ala. Sept. 29, 2009) (denying motion to amend pleadings filed approximately five and a half months after deadline).

Plaintiff knew or should have known (and his counsel easily could have learned through communications with plaintiff or through discovery) that he was not a Cable One internet subscriber or user at his Anniston address during the NebuAd test period.  Even after Cable One's Answer asserted the defense that plaintiff Green had no standing, *see* Dkt. # 12 at 24, plaintiff's counsel "took no steps to acquire" information bearing on this issue, either by adducing competent evidence from plaintiff or through discovery from defendant.  *See Sosa*, 133 F.3d at 1419; *Southern Grouts*, 575 F.3d at 1241 n.3 ("The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes.  That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.").  "Counsel thus left to chance a critical component of subject matter jurisdiction." *Sosa*, 133 F.3d at 1419.

Moreover, although Cable One's November 24, 2010 brief in opposition to plaintiff's then-pending motion for class certification argued in detail that plaintiff lacked standing, *see* Dkt. # 48, at 12-14, plaintiff's counsel continued to sit idly for nearly two months afterwards, and waited until plaintiff's reply brief on class certification was due to file a pleading withdrawing his motion for class certification and suggesting that he might later seek leave to amend.  (Dkt. # 52).

Such delay is itself inexcusable.  *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) ("Oravec was aware of the defendants' challenge . . . when the defendants filed their motion for summary judgment.  He nonetheless waited an additional three months . .  to seek leave to amend.  Under these circumstances, the district court acted within its discretion in denying his motion.").

In sum, plaintiff lacks "good cause" under Rule 16(b) to seek any exception to this Court's Scheduling Order.

## III.   Plaintiff's Motion Does Not Satisfy Rule 15's Amendment Standard.

In addition to being jurisdictionally barred and without cause under Rule 16(b), plaintiff's motion to amend fails to meet the amendment standards set forth in Rule 15.  Denial of amendment is proper "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

The undue delay and lack of diligence of plaintiff and his counsel is detailed above.  In addition, Cable One would suffer severe and unjustified prejudice if plaintiff now were permitted a "do-over."  First, over the past year, Cable One has expended enormous time and resources defending this lawsuit.  Cable One

- 15 -

propounded interrogatories and document requests on plaintiff Green; Cable One deposed plaintiff Green; Cable One engaged in extensive negotiations with plaintiff's counsel after plaintiff Green refused to produce his computer, and Cable One filed substantial papers in opposition to plaintiff Green's motion for class certification (which he then withdrew) and in support of Cable One's pending motion to dismiss this action.

Granting plaintiff's motion to substitute new plaintiffs at this late date – when the deadline for class certification motions closed over five months ago and the deadline for concluding fact discovery is less than one month away – would sweep aside Cable One's prior work. *See Columbus Bank & Trust Co. v. McKenzie Trucking & Leasing LLC*, No. 4:07-CV-189, 2009 WL 3526648, at *5 (M.D. Ga. Oct. 23, 2009) (rejecting motion to amend where defendant "Synovus conducted discovery, gathered evidence in support of its claim, and filed for summary judgment in reliance on Campbell's pleadings").[14]

Second, allowing amendment here also would delay the proceedings considerably, as class certification discovery and briefing would need to be

---

[14]     *See also Velazquez v. GMAC Mortg. Corp.*, No. CV 08-5444, 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009) (denying leave to substitute a new named plaintiff in a putative class action because amendment would "moot[] the substantial amount of discovery that has already been completed regarding the [named plaintiffs]" as well as work on "a motion to dismiss dealing with issues particular to the [named plaintiffs]"); *Hitt v. Arizona Beverage Co., LLC*, No. 08cv809WQH-POR, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) ("[G]ranting the Motion to Amend would effectively moot the Plaintiff-specific work Defendants have done.").

reopened, a new discovery and class certification briefing schedule would need to be established, and at a minimum Cable One would need to depose and take additional written discovery from the two proposed substitute plaintiffs in order to assess their suitability to represent a putative class. *See Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 529 n.6 (D. Md. 2001) (noting that adding new plaintiffs would lead to delay, because defendants "would . . . be entitled to determine whether the claims of the parties proposed to be added would be typical of the class and whether they would be adequate class representatives").

## CONCLUSION

For all these reasons, plaintiff's motion to amend must be denied and his lawsuit must be dismissed.

Dated:  February 7, 2011                     By:  /s Eric C. Bosset

                                             Eric C. Bosset
                                             COVINGTON & BURLING LLP
                                             1201 Pennsylvania Avenue, N.W.
                                             Washington, DC 20004
                                             Telephone: (202) 662-5606
                                             Fax: (202) 662-6291
                                             ebosset@cov.com

                                             *One of the Attorneys for
                                             Defendant*

Michael R. Pennington
Robert J. Campbell
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Telephone: (205) 521-8000
Fax: (205) 521-8800
mpennington@babc.com
rcampbell@babc.com

Simon J. Frankel
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Fax: (415) 591-6001
sfrankel@cov.com

Michael D. Hays
Jonathan D. Hart
DOW LOHNES PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6802
Telephone: (202) 776-2000
Fax: (202) 776-2222
mhays@dowlohnes.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of February, 2011, I served a copy of the foregoing upon the following persons by electronic mail and by placing a true and correct copy of the same in the U.S. mail, proper postage affixed thereto, and addressed as follows:

Joey K. James
BUNCH & JAMES
210 E. Tennessee Street
Florence, AL 35630
joey@bunchandjames.com

Scott A. Kamber
David A. Stampley
KAMBERLAW, LLC
11 Broadway, Suite 2200
New York, NY 10004
skamber@kamberlaw.com
dstampley@kamberlaw.com

Brian J. Panish
Pete Kaufman
Rahul Ravipudi
PANISH, SHEA &
BOYLE, LLP
11111 Santa Monica Blvd.
Suite 700
Los Angeles, CA 90025
panish@psblaw.com
ravipudi@psblaw.com

<u>s/ Robert J. Campbell</u>
One of the Attorneys for Defendant